## JEZEWSKI v. UNITED STATES, and eighteen other cases. *

(Circuit Court of Appeals, Sixth Circuit. June 10, 1926.)

Nos. 4497–4499, 4501, 4503–4511, 4517, 4523, 4530, 4554–4556.

**1. Criminal law ⟨⟩901—Error in overruling motion for directed verdict is waived by introduction of evidence without subsequent renewal of motion.**

Error in overruling a motion for directed verdict at close of government's case is waived by introduction of evidence by defendants without subsequent renewal of the motion.

**2. Conspiracy ⟨⟩47—Conspiracy may be established by circumstantial evidence, from which inference of common design, intent and purpose arises.**

Conspiracy is sufficiently proved, if the evidence shows such concert of action, or facts and circumstances from which the natural inference arises, that the overt acts were in furtherance of a common design, intent and purpose of the alleged unlawful conspiracy.

**3. Criminal law ⟨⟩1158(1).**

Under Rev. St. § 1011 (Comp. St. § 1672), the Circuit Court of Appeals is without authority to determine the weight of the evidence.

**4. Conspiracy ⟨⟩24—Immaterial that different groups, engaged in common unlawful purpose, were strangers to each other.**

Where saloon keeper, police officer, and manufacturers and distributors of beer, charg-

*Rehearing denied October 7, 1926.

ed with conspiracy, were each engaged in common unlawful purpose to manufacture and sell beer, and each did his part in furtherance thereof, it was immaterial that the different groups were wholly or partly strangers to each other; some not knowing where the distributors got the beer, and the manufacturers not knowing to whom the distributors were selling.

### 5. Conspiracy ⬡⟳47.

Evidence *held* to sustain conviction of numerous defendants of conspiracy to violate National Prohibition Act, tit. 2 (Comp. St. Ann. Supp. 1923, § 10138½ et seq.), but not to support conviction of common laborers in brewery ostensibly making near beer.

In Error to the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Criminal prosecutions by the United States against Peter Jezewski, Max Wosinski, Sam Laskolin, Michael Buhr, Hans Havermann, James Margolis, Steve Kolodzi, Bertha Johnson, Joseph Papiecz, Mike Schachtner, Walter Wandrei, Peter Russo, Alexander Koerner, John Hemmler, Walter Kowalski, Sam Bologna, Jacob Sieczorek, Andrew Freiman, and John Henne. Judgments of conviction, and defendants separately bring error. Reversed as to five defendants, and affirmed as to all others.

The above named plaintiffs in error were indicted with others, for conspiracy to violate title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½ et seq.), by manufacturing, transporting, selling, possessing for sale, and bartering, soliciting, and receiving orders for the sale, of intoxicating liquors. There are four other counts in the indictment, charging like conspiracies; but, it appearing that each of these relates to the same transactions included in the first count, the court properly charged the jury that the defendants could not be found guilty of more than one offense. Of the 45 defendants before the court, 6 pleaded guilty, the court directed a verdict of not guilty as to 5 others, 3 were found not guilty, and the jury returned a verdict of guilty against the remaining 31 defendants jointly tried upon this indictment. For the purpose of convenience, counsel have classified the defendants into several groups —the brewery group, consisting of Havermann, Freiman, Ross, partners owning and operating the West Side Brewery, and their employees, Hemmler, Henne, Koerner, Russo, Schachtner, and Wandrei; the distributing group including Silverman, Ferguson and Squeres; the official group, including Jezewski, the mayor, and Wosinski, the di-

rector of public safety, of the city of Hamtramck, Mich.; and the saloon keeper group, including all the other defendants. Squeres, Stone, Czarnecki, Falkowski, Czwajda, and Kurczak pleaded guilty and were sentenced. Silverman, Ferguson, who was also a lieutenant of police, Miller, Budnik, Chanski, Chudy, Druillard, Brombach, and Welling have abandoned this proceeding in error and are now serving their sentences. McNulty died after the filing of this petition in error.

Evidence was offered on the part of the government tending to prove that the partnership of Havermann, Ross & Frieman, doing business under the firm name and style of National Products Company, made application to the prohibition director for the state of Michigan for authority to operate a dealcoholizing plant, the operation of which would require the manufacture of beer with an alcoholic content largely in excess of one-half of 1 per cent., after which the alcohol would be withdrawn therefrom, so as to bring the product within the legal requirements; that about the month of June, 1923, Louis Silverman and John Ferguson, who was then a lieutenant of police in the city of Hamtramck, Mich., called at the near beer saloon of Frank Squeres, and then and there entered into an agreement and arrangement with him by the terms of which they were to sell and distribute beer from the West Side Brewery in the city of Hamtramck, which would not be dealcoholized and would contain a very much larger percentage of alcohol than permitted by the National Prohibition Act; that in pursuance of this agreement Ferguson and Squeres called upon the saloon keepers of Hamtramck and took orders for this West Side beer, which was delivered in trucks of the West Side Brewery to the saloon operated by Squeres between 4 and 6 o'clock in the morning, and was later delivered by the same trucks and drivers to the saloons of the various other defendants named in the indictment; that the manufacture, distribution, and sale of this beer openly over the counters of the saloonkeepers in Hamtramck continued from June, 1923, until the month of December, 1923, without interference or arrest by the police of Hamtramck of any person engaged in this unlawful enterprise.

It is further claimed on the part of the government that Jezewski, the mayor, Wozinski, the director of public safety, Berlinger, the chief of police, and Ferguson, lieutenant of police of the city of Hamtramck, entered into this conspiracy charged in the

indictment, and in aid and furtherance thereof not only failed and refused to perform their official duties, but also agreed to afford and did afford police protection to their codefendants engaged in this conspiracy to manufacture, distribute, and sell intoxicating liquor in violation of the National Prohibition Act, and to that end prevented the police of Hamtramck from arresting any person or in any way interfering with the manufacture, distribution or sale of this beer; that as an inducement to these saloon keepers to purchase this beer the distributors informed them of this arrangement, and promised them they would have nothing to fear from the Hamtramck police.

The defendants, other than those who pleaded guilty, denied that there was any such conspiracy, or, if there was such a conspiracy on the part of those who pleaded guilty, they were not parties thereto; that the members of the different groups were largely strangers to each other, and some of them had never met until after the return of this indictment; that other beer of like alcoholic content was being distributed and sold in Hamtramck during the continuance of this alleged conspiracy; and that some of these defendants had no knowledge where this beer was being manufactured, and no acquaintance whatever with the proprietors of the West Side Brewery.

Ira J. Pettiford, of Detroit, Mich., for plaintiff in error Laskolin.

Louis W. McClear, of Detroit, Mich. (McClear & Toy, Percy W. Grose, and Fleming, Baird & Morden, all of Detroit, Mich., on the brief), for plaintiffs in error Jezewski and Wosinski.

Peter L. Jorgenson, of Detroit, Mich., for plaintiff in error Buhr.

Fleming, Baird & Morden, of Detroit, Mich., for plaintiff in error Havermann.

Delos G. Smith, U. S. Atty., of Detroit, Mich. (John B. Marshall, Sp. Asst. U. S. Atty., of Washington, D. C., on the brief), for the United States.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). [1] It is insisted on behalf of the plaintiffs in error that the verdict and judgment are not sustained by the evidence. The record does not present this question, at least, in so far as a large number of these plaintiffs in error are concerned. Motions for directed verdicts were made at the close of the government's case.

These motions were not renewed at the close of all the evidence, and by proceeding with the introduction of evidence in their own behalf the defendants waived the error, if any, in overruling them. Cohen v. U. S. (C. C. A.) 294 F. 488, 491. It is claimed, however, that a number of these defendants did not introduce any evidence in their own behalf, and that as to them there was no waiver. If that contention were conceded, it is nevertheless clear, in so far as these motions relate to and include the defendants other than as hereinafter specifically mentioned, the motions were properly overruled.

[2] As a general rule, conspiracy is not suspectible of direct proof of the unlawful agreement of the parties. It is sufficient if the evidence shows such concert of action, or such facts and circumstances from which the natural inference arises that the overt acts were in furtherance of a common design, intent, and purpose of the alleged unlawful conspiracy. Davidson v. U. S. (C. C. A.) 274 F. 285; Allen et al. v. United States, (C. C. A.) 4 F.(2d) 688, 691. In this case, however, there was the direct testimony of co-conspirators who had pleaded guilty, not only to the existence of the conspiracy, charged in the indictment, its intent, scope, and purpose, but also as to facts and circumstances from which the natural inference arises that these defendants, except as hereinafter mentioned, were parties thereto. This testimony is supplemented and corroborated by the testimony of other witnesses as to the same or similar facts and circumstances.

[3] In order that the unlawful purposes of the conspiracy entered into between Squeres, Silverman, and Ferguson might be accomplished, two things were absolutely necessary, and a third desirable, if not essential. First, these distributors must arrange for the purchase of beer that had not been dealcoholized from the proprietors of the West Side Brewery; second, they must find some person or persons willing to purchase this beer from them and sell it at retail; and, third, police protection was desirable, if not actually necessary, to the success of their unlawful enterprise. The government offered testimony tending to prove beyond a reasonable doubt that these distributors did purchase for many months, and in large quantities, West Side beer that had not been dealcoholized, from some one or more of the partners, or the authorized agents of the partnership, operating the West Side Brewery, for which they paid $17.50 per one-half barrel, when the price of "near beer" was

$4.50 per one-half barrel; that this beer was transported in trucks of the brewery company, by its agents and employees, to the Squeres saloon, and later distributed by the same employees and trucks to the saloon keepers; that some of these saloon keepers purchased this beer that had not been dealcoholized from the distributors, paying therefor $22.50 per one-half barrel, and sold the same over their counters at 25 cents per glass, when "near beer" was selling for 10 cents per glass; and that at least Ferguson, the lieutenant of police, and Silverman, promised the saloon keepers, as an inducement to purchase this beer and sell it at retail, that they would not be molested by the police officers. This court has no authority to determine the weight of the evidence. R. S. § 1011 (Comp. St. § 1672); Atlantic Ice & Coal Corp. v. Van (C. C. A.) 276 F. 646. [4] If this testimony is true, it is wholly unimportant whether the saloon keepers or the police officers actually knew ·where the distributors were obtaining this beer, or whether the manufacturers of the beer knew to whom the distributors were selling it or whether these several groups were all or in part strangers to each other. They were each and all engaged in a common unlawful purpose, and each and all contributed their part to the furtherance of the unlawful purpose of the continuing conspiracy initiated by these distributors, if they were not in fact originally parties thereto. Rudner v. U. S. (C. C. A.) 281 F. 516, 519, 520.

The fact, if it be a fact, that other beer of like alcoholic content was sold in Hamtramck during the continuance of the conspiracy alleged in the indictment is of no importance, except in so far as it may reflect upon the existence or nonexistence of this conspiracy. There may have been other conspiracies of like nature in reference to other beer, but the evidence is practically conclusive that Squeres, Silverman, and Ferguson entered into a conspiracy to buy, transport, and sell West Side beer, and the question here presented is whether the plaintiffs in error, or either of them, were parties to that particular conspiracy.

It is also assigned as error that defendants were denied a public trial. No such objection was made during the pendency of the trial, but whether or not this question is presented by this record need not be decided. This assignment of error is merely technical. The defendants were given a public trial as required by this provision of the Constitution. Callahan v. U. S., 240 F. 683, 153 C.

C. A. 481; Davis v. U. S., 247 F. 394, 396, 159 C. C. A. 448, L. R. A. 1918C, 1164.

It is also assigned as error that the court erred in admitting testimony of acts and conversation after the conspiracy terminated. The witness Squeres testified that he had handled all the beer that came into Hamtramck from the West Side Brewery and that he handled beer until some time in December, 1923. There is no evidence tending to prove that Squeres handled any other beer, and therefore his testimony is not fairly subject to any construction other than that he handled West Side beer until some time in December. Nor does this construction conflict with the evidence of drivers as to the time they were in the employ of the West Side Brewery. One driver testified that he began in September and worked about two months. "About" is a very elastic word, especially when used in reference to a past transaction. [5] In a separate brief on behalf of Jezewski, the mayor, and Wosinski, the director of public safety, of the city of Hamtramck, the claim is made that, except for the evidence tending to prove lack of vigilance on their part in prosecuting violation of the prohibition law, there is no evidence whatever connecting them with this conspiracy. This contention wholly overlooks the very substantial evidence of facts and circumstances from which the natural inference arises that this failure to enforce the law was not merely accidental or fortuitous, but in furtherance of the purposes of this conspiracy for the common profit and advantage of all persons engaged therein.

These violations of the prohibition laws were open, notorious, and continuous for many months. These plaintiffs in error were frequenters of these saloons, and had personal knowledge of the fact that the law was being openly and shamelessly violated. Ferguson, who was a lieutenant of police and a friend and companion of both of these plaintiffs in error, entered into this conspiracy, and agreed with Squeres and Silverman to distribute West Side beer. As an inducement to the saloon keepers to purchase the same, he promised them police protection. Without the aid and consent of his superior officers, he could not have so faithfully kept this promise.

Silverman, whose contacts extended to each group, and whose activities no doubt were largely instrumental in uniting these several groups into an efficient working organization, essential to the purposes of the conspiracy, was so evidently certain of po-

lice protection that he agreed to pay any fines that might be assessed against the saloon keepers who would purchase this West Side beer. The subsequent conduct of these officials at least tends to prove that Silverman then knew this promise could be safely made without fear of financial loss.

Berlinger, the chief of police, advised some of these defendants to "look out for the state police." Wosinski, in company with Berlinger, practically compelled these saloon keepers to purchase a large number of tickets to "Ye Old Town Ball" at $3 apiece, which they said was for the purpose of paying the mayor's campaign expenses. Jezewski was present at this ball from about 11 o'clock p. m. until 5 o'clock the next morning, and bought and drank the beer that had been furnished for this ball from the West Side Brewery. These plaintiffs in error, not only failed and neglected to instruct the police to arrest any saloon keepers found violating the state or national prohibition laws, but strenuously objected to any interference with the saloon keepers by the police of the city. It is unimportant whether their motive was expectation of financial profit from the sale of beer, or from the sale of tickets for "Ye Old Town Ball," or desire for the re-election of the mayor and Wosinski's retention in office; the facts established by the evidence fully justify the inference that the refusal of these officers to perform their sworn duty was not attributable to neglect and indifference only, but rather that it was part and parcel of the plan of the conspiracy charged in the indictment and practically essential to its perpetuity and success. Allen et al. v. United States, supra.

It is also claimed on the part of these officials that the court erred in excluding the evidence of Wm. P. Rutledge, lieutenant of police of the city of Detroit, by whom it was sought to prove that the order in reference to police men in uniform entering "near beer" saloons was in force in the city of Detroit, and in many other large cities of the United States. It does not appear from the record that the government challenged the advisability of this order, but, on the contrary, introduced evidence tending to show that no such order had been thought necessary by the officials of Hamtramck, until complaint was made to them by the saloon keepers that the police were entering their saloons and drinking a large quantity of beer without paying for it. This evidence was competent, as tending to prove the relation and understanding between the officials of Hamtramck and the saloon keepers. The question as to the propriety of making such an order was not an issue in the case, but rather the time, the purposes, and the circumstances under which it was made.

Separate briefs have also been filed on behalf of Sam Laskolin and Michael Buhr, respectively, in which it is insisted that there is no substantial evidence connecting either of them with this conspiracy. In addition to what has heretofore been said in reference to the evidence in this case, it further appears from the testimony of Lukaszewicz, Harris, Johnson, Hammann, and Nowicki that Laskolin was the proprietor of the "near beer" saloon at 12075 Joseph Campeau; that West Side beer was frequently delivered at this place of business, and frequently sold there at 25 cents a glass.

In the absence of substantial evidence tending to prove that this was bought and sold by his bartender without Laskolin's knowledge or consent, a jury would be justified in finding that in these numerous transactions his bartender was acting in obedience to the orders and directions of Laskolin, even if it clearly appeared from the evidence that Laskolin was not present upon either of these occasions.

Frank Squeres testified positively that he and Ferguson had sold beer at the "near beer" saloon operated by Buhr and Kelly at 8587 Joseph Campeau, directly to Buhr and Kelly, and that upon one occasion he asked Buhr if he had any beer, and he said "he got enough." In view of this testimony, it is unnecessary to consider the legal proposition, presented by counsel for Buhr, that he cannot be held criminally responsible for what his partner did, unless he had knowledge and assented thereto.

It is unnecessary to burden this opinion with a discussion of all the many assignments of error, either upon behalf of all of the defendants, or any one of the defendants. The errors we have already noticed are the ones particularly relied upon in the briefs and arguments of counsel. It is sufficient to say in reference to the other assignments of error that we have carefully considered all of them in connection with the evidence in this record, and have reached the conclusion that the accused had a fair and impartial trial, that no error intervened, and that the verdict of guilty as to all of these plaintiffs in error was fully sustained by substantial evidence, except as to Peter Russo, Water Wandrei, John Henne, and John Hemmler. There is evidence in this record tending to prove that

Peter Russo. Walter Wandrei. and John Henne were common laborers employed by the National Products Company; that as such employees they worked all over the National Product plant-bottling works, the wash house, and wherever needed; but there is no evidence that they knew, or that the duties of their employment were such that they must necessarily have known, that this nondealcoholized beer was being marketed from this brewery, or that they performed any services directly in connection with the manufacturing or marketing of the same. For the reason stated, the judgments against Peter Russo, Walter Wandrei, and John Henne are reversed.

Apparently John Hemmler's name does not appear in this record, except in the indictment and the verdict. In the brief for Havermann and 14 others, attention is called to this fact, and not denied in the answering brief. Our attention is called to the fact that this record does not show the plea or sentence of Hemmler, nor any original assignment of error in his behalf. The record may be corrected in that respect, and, if it should appear from the corrected record that John Hemmler has been sentenced upon a verdict not sustained as to him by any evidence, the judgment against him will be reversed, and cause remanded. If he has not in fact been sentenced, this proceeding in error as to him will be dismissed, because prematurely brought.

The death of Albert McNulty has been suggested. His sentence did not include a fine, but imprisonment only, and for that reason there would be no purpose in reviving the action in the name of his personal representative. His petition in error is dismissed.

The judgments against all these plaintiffs in error, other than Peter Russo, Walter Wandrei, John Henne, John Hemmler, and Albert McNulty, are affirmed.