**BRAVERMAN et al. v. UNITED STATES.**
**FRANK v. SAME.**

Nos. 8714, 8715.

Circuit Court of Appeals, Sixth Circuit.

Jan. 14, 1942.

Writ of Certiorari Granted April 14, 1942.

See 62 S.Ct. 1037, 86 L.Ed. ——.

Donald B. Frederick, of Detroit, Mich., Robert N. Gorman, of Cincinnati, Ohio, and John E. Dougherty, of Peoria, Ill., for appellants.

Louis M. Hopping, of Detroit, Mich. (John C. Lehr, of Detroit, Mich., on the brief), for appellee.

Before SIMONS, ALLEN, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

The three appellants were indicted with numerous others upon seven counts of a single indictment, each count charging conspiracy to violate a separate and distinct internal revenue liquor law of the United States. The seven counts respectively charged appellants with conspiracy, in violation of section 37 of the Criminal Code, U.S.C.A., Title 18, section 88, (1) unlawfully to carry on the business of wholesale and retail liquor dealers without having the special occupational tax stamps as required by law; (2) unlawfully to possess distilled spirits, the immediate containers thereof not having affixed thereto stamps denoting the quantity of distilled spirits contained therein and evidence in payment of all internal revenue taxes imposed on such spirits; (3) unlawfully to transport large quantities of distilled spirits, the immediate containers not having affixed thereto the required stamps; (4) unlawfully to carry on the business of distillers without having given bond as required by law; (5) unlawfully to remove, deposit and conceal distilled spirits, in respect whereof a tax was imposed by law; (6) unlawfully to set up and possess unregistered stills and distilling apparatus; and (7) unlawfully to make and ferment mash, fit for distillation, on unauthorized premises.

The jury found the three appellants and another defendant, Harry Klein, "guilty as charged," and failed to agree upon a verdict as to two other defendants. Each of the appellants was sentenced to eight years' imprisonment and fined two thousand dollars.

(1) Appellants urge that under no view of the evidence was there presented more than one conspiracy and that there was a fatal variance between the indictment and the proof.

The indictment was drawn in manifest conformity to our holding in Fleisher v. United States, 6 Cir., 91 F.2d 404, where judgment of conviction was upheld on four conspiracy counts each charging the violation of a distinct internal revenue liquor law of the United States. We rejected the contention that the indictment charged only one continuing conspiracy, consisting of one crime only, for which there could be but one punishment. Applying the principle of Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306, that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not, we found that certain entirely distinct elements were required to establish the con-

spiracy described in each count of the indictment and accordingly that four distinct offenses were charged.

See, also, an earlier decision of this court, Parmenter v. United States, 6 Cir., 2 F.2d 945, 946. Compare Leonard v. United States, 6 Cir., 18 F.2d 208, 213.

In Telman v. United States, 10 Cir., 67 F.2d 716, a judgment of conviction on eight counts of conspiracies to violate various provisions of the National Prohibition Act, 27 U.S.C.A. § 1 et seq., was upheld. In the Ninth Circuit, conspiracy to bring aliens into this country and conspiracy to conceal them, after they had landed, have been held to constitute separate offenses, despite the fact that some of the overt acts were in execution of both conspiracies. Yenkichi Ito v. United States, 9 Cir., 64 F.2d 73, 77.

Mr. Justice Brandeis in Albrecht v. United States, 273 U.S. 1, 11, 47 S.Ct. 250, 254, 71 L.Ed. 505, with characteristic clarity, said: "One may obviously possess without selling; and one may sell and cause to be delivered a thing of which he has never had possession; or one may have possession and later sell, as appears to have been done in this case. The fact that the person sells the liquor which he possessed does not render the possession and the sale necessarily a single offence. There is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and punishing also the completed transaction."

In Meyers v. United States, 6 Cir., 94 F.2d 433, the doctrine of Fleisher v. United States, supra, was applied in the affirmance of the conviction of a defendant upon two counts, each charging conspiracy to violate a separate and distinct internal revenue liquor law of the United States.

In the Fleisher case, there being no bill of exceptions, we assumed, in view of the jury verdict of guilty on all four counts, that evidence was offered showing the existence of four separate conspiracies. In the instant case, there is a lengthy bill of exceptions, setting forth a mass of evidence. This evidence has been considered in the light of settled principles.

Under the statute, the gist of the offense of conspiracy is an unlawful combination which must be proven against all members of the conspiracy, each one of whom is then held responsible for the acts of all; but it is not required that an overt act be proven against each member of the conspiracy. Bannon v. United States, 156 U.S. 464, 468, 469, 15 S.Ct. 467, 39 L.Ed. 494.

There have been numerous decisions of this court to the effect that existence of a conspiracy may be established by inferences from circumstantial evidence. Johnson v. United States, 82 F.2d 500, 504; Susnjar v. United States, 27 F.2d 223; Zottarelli v. United States, 20 F.2d 795, 798; Williams v. United States, 3 F.2d 933, Israel v. United States, 3 F.2d 743; Remus v. United States, 291 F. 501; Windsor v. United States, 286 F. 51; Davidson v. United States, 274 F. 285, 287.

As was said in the last cited case: "A charge of conspiracy is one that is not easily susceptible of direct proof, nor is it essential to establish conspiracy that actual proof be offered of a definite plan or agreement entered into by conspirators. It is sufficient if the evidence shows such a concert of action in the commission of the unlawful act, or such other facts and circumstances upon which the natural inference arises, that the unlawful, overt act was in furtherance of a common design, intent, and purpose of the alleged conspirators to commit the same."

We repeat what was said in Meyers v. United States, 6 Cir., 94 F.2d 433, 434, supra: "The jury having found guilt, slight evidence connecting a defendant with a conspiracy may be substantial and, if it is, is sufficient."

Not only may actual conspiracy be proved by circumstantial evidence, but it is not even necessary to support conviction that it be shown that a conspirator had knowledge of the entire membership of the conspiracy. Zottarelli v. United States, 6 Cir., 20 F.2d 795, 798; Jezewski v. United States, 6 Cir., 13 F.2d 599.

It is the law of this circuit that where the evidence shows a continuing conspiracy for the illegal purchase and sale of liquor, persons who, with knowledge of the conspiracy, contribute to its effectuation by knowingly selling liquor to the initial conspirators, though at different times and without knowledge of each other, become parties to the conspiracy. Rudner v. United States, 6 Cir., 281 F. 516, 519, 520.

There is no required limitation upon the crime of conspiracy that each conspirator shall participate in or have knowledge of

all the operations of the conspiracy. A conspirator may join at any point in the progress of the conspiracy and be held responsible for all that may be or has been done. United States v. Manton, 2 Cir., 107 F.2d 834, 848; Allen v. United States, 7 Cir., 4 F.2d 688, 692; Baker v. United States, 4 Cir., 21 F.2d 903, 905.

Judge Knappen said in Zottarelli v. United States, 6 Cir., 20 F.2d 795, 796: "Under settled rules, we must take that view of the evidence, and the inferences reasonably and justifiably to be drawn therefrom, most favorable to the government, and determine therefrom whether verdict against the defendants might lawfully be rendered, and if there was substantial and competent evidence, which, if believed, would support conviction, the refusal to dismiss must be sustained. We cannot weigh the evidence or determine the credibility of witnesses." Citing, Burton v. United States, 202 U.S. 344, 373, 26 S.Ct. 688, 50 L.Ed. 1057, 6 Ann. Cas. 562; Kelly v. United States, 6 Cir., 258 F. 392, 406. See also Abrams v. United States, 250 U.S. 616, 619, 40 S.Ct. 17, 63 L. Ed. 1173.

■ The rule of our circuit and others was clearly stated and approved by Mr. Justice Sutherland, retired, with whom sat the present Chief Justice and Circuit Judge Clark in United States v. Manton, 2 Cir., 107 F.2d 834, 839: "It is not necessary that the participation of the accused should be shown by direct evidence. The connection may be inferred from such facts and circumstances in evidence as legitimately tend to sustain that inference. Indeed, often if not generally, direct proof of a criminal conspiracy is not available and it will be disclosed only by a development and collocation of circumstances. In passing upon the sufficiency of the proof it is not our province to weigh the evidence or to determine the credibility of witnesses. We must take that view of the evidence most favorable to the government and sustain the verdict of the jury if there be substantial evidence to support it. Hodge v. United States, 6 Cir., 13 F.2d 596; Fitzgerald v. United States, 6 Cir., 29 F.2d 881."

■ An elaborate review of the facts of this case seems unnecessary. Upon the principles of law which have been adduced, we find that the record reveals sufficient substantial evidence to justify the verdict of the jury convicting the three appellants upon all seven counts of the indictment, each of

which embraces an added element of criminality not contained in any other law. The conspiracies laid in each count are therefore separate and distinct crimes, separately punishable. The proof of overt acts by the conspirators, including appellants, in furtherance of each distinct conspiracy was abundant. The fact that the conspiracy was also a general one to violate all laws repressive of its consummation does not gainsay the separate identity of each of the seven conspiracies. From the evidence may be readily deduced a common design of appellants and others, followed by concerted action, to ship disguised contraband liquor from Chicago to eastern Michigan, to make mash, to set up stills, to operate illicit distilleries, to conceal the still-run product in warehouses apart from the distilleries, to possess and also to transport the liquor in unstamped containers, and to operate both a wholesale and a retail liquor business without giving bond as required by law or having the required excise tax stamps.

Two of the conspirators, Henry Skampo and Clarence Dracka, pleaded guilty to the charges in the indictment and testified against appellants and other defendants. Harry Klein, an important cog in the wheels of the conspiracy, was convicted along with appellants and has abandoned his appeal. Many other defendants pleaded guilty.

In the fall of 1935, Klein introduced Skampo, a partner of Dracka in the unlawful liquor business, to appellant Braverman and arrangements for shipments of contraband liquor were made. Braverman became interested financially with Skampo and Dracka in an illicit distillery. Braverman made numerous shipments of untaxpaid liquor from Chicago to Detroit under false labels and billing. Fictitious names of both consignors and consignees were used. Skampo paid Braverman for the various shipments by exhibited money orders.

In the spring of 1936, Braverman ceased shipping and was succeeded in this feature of the enterprise by appellant Wainer, who admitted that he had previously been a partner of Braverman in unlawful liquor business. Before Braverman withdrew from the conspiracy, if it be conceded that he did withdraw, he had conspired in all respects charged in the seven counts of the indictment.

Skampo testified: "Mr. Wainer said he understood we had been getting some alcohol and that we could not get any now;

if he could secure some and forward it to us, could we handle it. We [Dracka and the witness] told him we could. * * * We received the shipments from Al Wainer for a period of two or three months as I recall. That was in the spring of 1936." Wainer displayed entire familiarity with the manner in which Braverman had conducted the business and delivered the goods, and pursued the same course. When Wainer ran out of alcohol, Klein, who had originally tied Skampo in with Braverman, supplied Skampo and Dracka with liquor temporarily.

When Wainer personally ceased supplying Skampo and Dracka, he aided arrangements for the continued unlawful use of the same warehouse by these confessed conspirators and told them that they could have the tools located there. The partners rented the same warehouse space which had been used by Wainer and, at the request of the warehouseman Stevens, cleared up back rent.

Then entered appellant, Morris Frank, as the illicit liquor provender to Skampo and Dracka. Appellant Wainer admitted that he had met Morris Frank as far back as 1932 and had probably had "some business conversation" with him. Dracka and Skampo both testified to their transactions with Frank, who undertook to, and did supply them with illicit liquor at the same warehouse. They paid Frank directly for some fifteen or twenty such deliveries. There appears no differentiating feature in the manner in which Frank joined in the conspiracy which renders him less comprehensively culpable than the other conspirators. Indeed, Frank was quite active. Dracka testified, "After we got better acquainted, Mr. Frank brought the car and the alcohol into the warehouse himself. He usually helped me set the stuff on the elevator." It is manifest that he became a full fledged member of the conspiracies to violate the seven substantive internal revenue liquor laws and was properly convicted on all counts.

On the facts, we find the language of the concluding paragraph in United States v. Falcone, 311 U.S. 205, 211, 61 S.Ct. 204, 85 L.Ed. 128, inapplicable to the situation of appellant Frank in the instant case. The reasonable deduction from the evidence before us is that appellant Frank was fully cognizant of the widespread, comprehensive conspiracy.

(2) There is no merit in appellants' contention that the prosecutions were barred by the statute of limitations. The indictment was returned December 19, 1939; the earliest date upon which the conspiracy was charged to have been concocted was November 1, 1935.

In our judgment, a conspiracy continues, insofar as the statute of limitations is concerned, so long as there is a course of conduct in violation of law to effectuate its purpose. Ryan v. United States, 7 Cir., 216 F. 13; Eldredge v. United States, 10 Cir., 62 F.2d 449.

But in any interpretative aspect, the statute of limitations raises no bar to the prosecution of the instant case. The limitation period is by the plain language of the statute six years, and not three years as appellants insist. 26 U.S.C.A.Int.Rev.Code § 3748(a) (3) unequivocally provides: "For offenses arising under section 37 of the Criminal Code, March 4, 1909, 35 Stat. 1096 (U.S.C., Title 18, § 88 [18 U.S.C.A. § 88]), where the object of the conspiracy is to attempt in any manner to evade or defeat any tax or the payment thereof, the period of limitation shall also be six years." This section of the statute of limitations is thus, in terms, directly applicable to each of the seven counts.

There being no reversible error found in the record, the judgment of the district court on the verdict of the jury is affirmed as to all appellants.