Elzy Marvin SIGERS, Billy Burnsed, Henry James Connor, Paul Crews and Roy Lee Gilchrist * and Marvin Leroy Curry,* Appellants,

v.

UNITED STATES of America, Appellee.

No. 20004.

United States Court of Appeals Fifth Circuit.

Aug. 27, 1963.

---

* On Motion of the appellants, Roy Lee Gilchrist and Marvin Leroy Curry, the Court dismissed their appeals.

O. B. Cline, Jr., Dan Chappell, Miami, Fla., Leon A. Wilson, II, Waycross, Ga., for appellants.

Robert H. Newman, Asst. U. S. Atty., Lloyd G. Bates, Jr., Asst. U. S. Atty., Miami, Fla., Edith House, U. S. Atty., Southern District of Florida, for appellee.

Before CAMERON and WISDOM, Circuit Judges, and DeVANE, District Judge.

WISDOM, Circuit Judge.

The four appellants and seven other defendants were indicted in the United States District Court for the Southern District of Florida, Miami Division, for conspiracy to violate the internal revenue laws relating to distilled spirits. The indictment charges certain of the defendants with thirty-eight substantive violations. The trial of the substantive counts against the four appellants was transferred to the Jacksonville Division. The case was tried without a jury. The district court adjudged the four appellants (Sigers, Burnsed, Connor, and Crews) guilty of the conspiracy alleged in Count One and sentenced each to three years imprisonment. The court found three defendants (Howard, Gilchrist, and Curry) guilty of conspiracy and certain of the substantive counts. The court acquitted three of the defendants. One of the defendants, Davis, who had been closely associated with Howard, pleaded guilty.

The appellants assert that the trial judge erred in denying the appellants' motion for acquittal and in adjudging them guilty of conspiracy. They contend that there is no evidence of a conspiracy among the defendants; that at most the evidence shows three independent conspiracies. They contend also that there can be no conspiracy when the connecting link is, as in this case, a government informer.

## I.

In a sense, there were three conspiratorial wheels, each with its hub and spokes. But these were wheels within a wheel. The larger wheel was the conspiracy charged in Count One of the indictment. A brief review of the facts shows that there was an inter-linked overall conspiracy of the defendants in which the informer acted as a conduit rather than as a creative force for entrapment.

The first group consisted of Jimmy Lee Howard and Davis and others. Howard, a prime actor in the conspiracy, was a retailer in Miami. He obtained most of his supply of illicit whiskey from moonshiners in and near Macclenny, in North Florida. The second group, all from Macclenny, consisted of the four appellants: Sigers, about whom the others revolved, Burnsed, who worked in Sigers' store, and two others whom Sigers drew upon for supplies, Connor and Crews. The hub of the third group was Gilchrist, a restaurant owner in Okeechobee, Florida, who was both a wholesaler and a manufacturer of moonshine. Curry and others worked closely with Gilchrist.

As the record unfolds, Howard was having trouble obtaining sufficient whiskey from Macclenny to meet his commitments in Miami. Gilchrist, therefore, was valuable to Howard as another source of supply, and valuable to the appellants as an additional outlet for their Macclenny moonshine. The appellants dealt with each other on the production end, pooling their resources to supply the needs of Howard and Gilchrist and cooperating with each other to make the deliveries to Howard's agents. Howard and Gilchrist collaborated in dividing the appellants' output. Thus, within the large wheel the appellants conspired with Howard through his agents and conspired with Gilchrist who, in turn conspired with Howard.

Willie Lee, who was hired by the Florida State Beverage Department to investigate Howard, was the chief link connecting Howard with Gilchrist and with the Macclenny producers. While in prison on one of his two convictions for federal illicit liquor violations, Lee had become acquainted with both Howard and Gilchrist. He and another state-employed informer, who worked with him in investigating Howard, were serving sentences for state felony convictions relating to illicit whiskey at the time of the trial. Lee got in touch with Howard who told him that he was having difficulty maintaining supplies of moonshine. Howard employed Lee to haul whiskey for him.

Shortly thereafter, Howard telephoned to someone in Macclenny and ordered a quantity of whiskey. A fair inference suggests that Howard called Sigers. Howard instructed Lee to go to Macclenny and receive the whiskey delivery from Sigers, and he provided Lee with the necessary funds to make the purchase. Following Howard's instructions Lee drove to Macclenny, got in touch with Sigers, picked up the whiskey, and turned it over to Howard in Miami. Lee made similar trips for whiskey on a number of occasions during the period of the alleged conspiracy. In the later trips he dealt with Gilchrist and the appellants. Gilchrist took advantage of Howard's arrangement with the appellants to meet his individual whiskey needs from portions of the whiskey supplied by the appellants. It may be inferred from the evidence that Gilchrist did so pursuant to an agreement with Howard.

Howard also instructed Lee to find someone to set up a still for him. Lee complied by approaching Gilchrist with Howard's requirements. Howard and Gilchrist worked out their arrangements to set up the stills with a portion of the production earmarked for Howard.

■ The record shows a direct relation between Howard and the appellants in that the Macclenny moonshine ended up in five-gallon jugs for Howard to retail in Miami. And when Lee and other informers served as connecting links, they acted as agents for their principal, Howard. The fact that they were not chargeable as defendants is immaterial. Their activities were at all times in accordance with instructions from the conspirators and neither the appellants nor any of the other defendants were lured into the violation through the efforts of the informers or the undercover investigator. The evidence of the appellants' actions, their relationship with the other defendants, through the conduit of their agent, Lee, the manner in which they knew exactly how to fit into the part they were to play in supplying whiskey pursuant to terms and conditions which must have been subject to prior agreement

with Howard, clearly show an agreement whereby the appellants were to be an important part of the over-all scheme.

## II.

There is no merit to the appellants' legal contentions.

■■ A. Separate groups acting as conspirators among themselves may still constitute members of an overall conspiracy. Thus, in Poliafico v. United States, 6th Cir. 1956, 237 F.2d 97, cert. denied, 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597 (1957) the defendants contended that while the Government had charged a single conspiracy, its evidence only purported to show a number of different conspiracies. Poliafico, the ringleader, had organized an operation to buy pure heroin in large lots, cut it, and sell it in the "retail" trade. He bought the heroin from some of the defendants and arranged with others to adulterate it and sell it to addicts. The court held this to constitute one, overall conspiracy of Poliafico and his associates to buy and sell heroin at a profit:

> "When two or more persons are shown to have been engaged in the same unlawful conspiracy, having for its object the same common and unlawful purpose, it is not necessary to prove the knowledge by one of the dealings, or even of the existence, of the others, in order to render evidence of the actions of those others admissible against that person. There was one conspiracy in this case —the continuing scheme of buying and reselling heroin." 237 F.2d at 104.

The court also held that those who had joined in the conspiracy after it was formed would be responsible for all that had gone on before.

In Jezewski v. United States, 6th Cir., 13 F.2d 599, cert. denied, Ross v. United States, 273 U.S. 735, 47 S.Ct. 243, 71 L.Ed. 865 (1926), the defendants, convicted of conspiracy to violate the Prohibition Act, contended on appeal that there was no conspiracy because the members of the different groups involved were largely strangers to each other and some of them had never met until the indictment was returned. Some did not know where the illicit beer was being manufactured and others did not know where it was being sold. The Sixth Circuit held that it was unimportant whether the saloon keepers or the police officers involved knew where the distributors were obtaining the beer, or whether the manufacturers knew to whom the distributors were selling it, or whether the several groups were all or in part strangers to each other. "They were each and all engaged in a common unlawful purpose, and each and all contributed their part to the furtherance of the unlawful purpose of the continuing conspiracy initiated by these distributors, if they were not in fact originally parties thereto." Id., 13 F.2d at 602.

In Lefco v. United States, 3rd Cir. 1934, 74 F.2d 66, twenty defendants were charged with the conspiracy of using the mails to defraud. The evidence showed that three or four main conspirators would set up a business in collaboration with other conspirators in various cities, obtain goods on credit without intending to pay for them, sell the goods at half cost to other conspirators, and then go into bankruptcy. The defendants argued that the evidence showed, if anything, four separate conspiracies rather than the one charged. The court found that the evidence showed the existence of one conspiracy. "[T]he main conspirators, comprised the trunk of the conspiracy. The others * * * though connected diversely with the main conspirators, acted none the less intimately with them. They constituted the branches of the conspiracy,—the branches that bore the fruit." Id. at 69. The court said:

> "There is nothing new in this defense of multiple conspiracies and nothing uncertain in the law arising from such a defense. Of course, to sustain a verdict on an indictment charging one particular conspiracy the evidence must establish the conspiracy charged. Evidence that establishes another conspiracy or sev-

eral other conspiracies will not sustain the verdict. From this statement of law defendants, when in extremity, commonly resort to the contention that, not knowing all the other conspirators or not knowing [what] all the others were doing, they are responsible only for what they themselves were doing when caught * * *.

   *    *    *    *    *    *

All conspirators need not be acquainted with one another, nor need they have originally conceived or participated in the conception of the conspiracy. Those who come on later and cooperate in the common effort to obtain the unlawful results become parties thereto and assume responsibility for all done before. * * * Nor does the mere fact that conspirators individually or in groups perform different tasks to a common end split up a conspiracy into several different conspiracies." 74 F.2d at 68–69.

In a recently decided case, United States v. Wenzel, 4th Cir. 1962, 311 F.2d 164, involving a conspiracy to pass counterfeit money, the court held that the evidence did not show there were separate conspiracies merely because the different activities (the passing of the bogus bills) involved some but not all of the participants. "It is fundamental that it is not necessary that every act undertaken in carrying out the object of a conspiracy should be participated in by every member of the conspiring group. In carrying out the purpose of a conspiracy it will be found that in practically every case different groups played different parts. To unite them in a single conspiracy it is only necessary that the activities of each individual or group be directed toward accomplishing a single criminal objective." Id. at 167. See also Duke v. United States, 233 F.2d 897, 901 (5th Cir. 1956); United States v. Gilboy, 160 F.Supp. 442, 453 (Md.Pa.1958).

The case primarily relied upon by appellants, Kotteakos v. United States, 1946, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557, is distinguishable from the case at bar. In that case thirty-two persons were charged with a single conspiracy to induce various financial institutions to grant credit with the intent that the loans would then be offered to the Federal Housing Authority for insurance upon applications containing false and fraudulent information. The only connection between the eight different groups involved was that all the fraudulent loan transactions were carried on through one man. The Government admitted that the evidence proved not one conspiracy but eight or more different ones. Id., 328 U.S. at p. 752, 66 S.Ct. at p. 1241. The Supreme Court held that this was not harmless error as had been held below.

■ B. In the circumstances this case presents, we see no legal objection to the Government's reliance on the testimony of informers who served, in part, as links connecting the conspirators. Here the activities of the informers were entirely in accordance with instructions from the defendants. The facts in the case at bar are unlike those in O'Brien v. United States, 7th Cir. 1931, 51 F.2d 674, in which the court held that the conspiracy was conceived by prohibition agents and that the Government was therefore estopped to allege the conspiracy. This case is more analogous to the many conspiracy cases in which the defendants *unsuccessfully* argue entrapment. The Supreme Court said in the leading case of Sorrells v. United States, 1932, 287 U.S. 435, 441, 53 S.Ct. 210, 212, 77 L.Ed. 413:

> "It is well settled that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises." Id., 287 U.S. at p. 441, 53 S.Ct. at p. 212.

And again in Sherman v. United States, 1958, 356 U.S. 369, 372, 78 S.Ct. 819, 820, 2 L.Ed.2d 848:

> "Entrapment occurs only when the criminal conduct was 'the product

of the *creative* activity' of law-enforcement officials. * * * To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." See also Holt v. United States, 5 Cir. 1961, 288 F.2d 447, cert. denied 368 U.S. 819, 82 S.Ct. 35, 7 L.Ed.2d 25; United States v. Miller, 2 Cir. 1957, 246 F.2d 486, cert. denied 355 U.S. 905, 78 S.Ct. 332, 2 L.Ed.2d 261; United States v. Lev, 2 Cir. 1960, 276 F.2d 605, cert. denied 363 U.S. 812, 80 S.Ct. 1248, 4 L.Ed.2d 1153; Weathersbee v. United States, 4 Cir. 1958, 263 F.2d 324.

Perhaps the closest case in point is Jung Quey v. United States, 9 Cir. 1915, 222 F. 766. This was an appeal from the conviction of four defendants for a conspiracy to receive illegally imported opium. Two of the defendants gave the opium to the quartermaster on board a ship in the port of San Francisco. He then delivered the opium to the two other defendants. The quartermaster, therefore, was the connecting link between the two sets of defendants, just as Lee, the government informer, was in this case in some of his activities. The defendants contended that the court erred in not instructing the jury that if the jury found that the quartermaster took the opium off the ship with the Government's permission, given to enable it to detect the other conspirators, then the act would not have been unlawful and hence could not "be considered [by the jury] as establishing in any degree the guilt of any of the defendants of the conspiracy as alleged in the indictment." 222 F. at 772. The case is old and the point in which we are interested was raised only on the contention that the trial judge's failure to instruct on the point was erroneous. Nevertheless, the factual situation is similar to the case at bar. The Court of Appeals held that the trial court was not in error in refusing the requested instructions.

 In sum, we hold that there was a single conspiracy in this case, and that a conspiracy may be proved even though the link connecting many of the activities of the conspirators is a Government informer. The judgment is

Affirmed.

CAMERON, Circuit Judge, concurs in the result.