Floyd Rairdon HAYES, Appellant,

v.

UNITED STATES of America,
Appellee.

Cecil H. BENNETT, Appellant,

v.

UNITED STATES of America,
Appellee.

Stanley Burke CLEVENGER, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 17363–17365.

United States Court of Appeals
Eighth Circuit.

March 30, 1964.

Certiorari Denied June 15, 1964.
See 84 S.Ct. 1883.

Stanley M. Rosenblum and Merle L. Silverstein, St. Louis, Mo., for appellants; Stanley M. Rosenblum and Merle L. Silverstein, St. Louis, Mo., filed joint brief for appellants Hayes and Clevenger; Barnes Griffith, Kansas City, Mo., filed brief for appellant Cecil H. Bennett.

Owen A. Neff, Atty., Crim. Div., Dept. of Justice, Washington, D. C., for appellee; Herbert J. Miller, Jr., Asst. Atty. Gen., Washington, D. C., and Richard W. Schmude, Lafayette E. Broome and James J. Featherstone, Attys., Crim. Div., Washington, D. C., with him on the brief.

Before VAN OOSTERHOUT, MATTHES and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Defendants Floyd Rairdon Hayes, Cecil H. Bennett and Stanley Burke Clevenger, hereinafter sometimes jointly referred to as appellants, have taken timely appeals from their convictions and sentences upon the counts of a sixteen count indictment upon which each stands convicted. Count I of the indictment, which is the count most vigorously attacked, charges the three appellants and four co-defendants, Karl Rogers, Robert Williams, Roy Williams and Earl Dean Williams, with conspiracy under 18 U.S.C.A. § 371 to violate 29 U.S.C.A. § 501 (c). Section 501(c), effective September 14, 1959, provides:

"(c) Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be (punished). * * *"

It is alleged and undisputed that the seven defendants charged in the indictment are all officers or employees of Local 41 and/or Local 541 and/or Joint Council 56, all affiliated with the Brotherhood of Teamsters.

Count I charges that the seven defendants between September 14, 1959, and February 20, 1962, conspired to unlawfully abstract money and assets from the union locals just described, of which they are officers or employees. In substance, three categories of fraudulent transactions are asserted to wit: (1) Invoice padding and kickback arrangements with two business establishments, Harold's D-X Service Station and La Louisiane Restaurant; (2) fraudulent automobile repairs on nonauthorized vehicles at three garages; and (3) fraudulent home improvements and furnishings for Hayes.

Numerous overt acts in furtherance of the conspiracy are alleged.

Counts II through XVI charge substantive offenses arising out of the same type of wrongful conduct involved in the conspiracy charge and are directed against some or all of the defendants heretofore named. All counts charge the defendants named in such counts as officers or members of labor organizations willfully and intentionally embezzled assets of such labor organizations and converted them to their own use or the use of others directly or indirectly in violation of 29 U.S.C.A. § 501(c). We are here concerned primarily with the charges against the three appellants. Hayes is charged in Counts II, III, V, VI, VIII, IX, X,[1] XI, XIII, XIV, XV and XVI. Bennett is charged in Counts II, V, VIII, XI, XII, XIV, XV and XVI. Clevenger is charged in Counts VIII and XI.

Counts II, III and IV charge a pad and kickback arrangement with La Louisiane Restaurant. Counts V, VI and VII charge a similar arrangement with Harold's D-X. Counts VIII through XIII charge fraudulent arrangements with automobile establishments to have unauthorized personal automobile repairs charged to and paid for by the unions. Counts XIV, XV and XVI involve improvements and furnishings for Hayes'

---

1. Count X was dismissed by the court.

home fraudulently charged to and paid for by Local 41.

Defendant Robert Williams entered a plea of guilty to all counts on which he was charged and was an important witness for the Government at the trial. The remaining six defendants were tried to a jury. The court sustained Earl Williams' motion for acquittal upon the ground the evidence was insufficient to sustain the charges against him. Defendants Karl Rogers and Roy Williams were acquitted by the jury upon all counts.

Hayes was found guilty upon all counts upon which he was charged. He was sentenced to five years imprisonment on Counts I and II to be served concurrently and fined $500 upon each of the remaining ten counts upon which he was convicted, with imposition of imprisonment upon such counts suspended.

Bennett was found guilty on Counts I and VIII and not guilty of the other charges against him. He was sentenced to two years imprisonment on Count I; imposition of imprisonment on Count VIII was suspended but defendant was placed on probation for a two year period beginning at the expiration of the Count I sentence.

Clevenger was found guilty on Counts I, VIII, and XI, which were the only counts with which he was charged. He was sentenced to two years imprisonment on Count I. Imposition of sentence on Counts VIII and XI was suspended, defendant being placed on probation for two years commencing with the expiration of the Count I sentence.

Appellants here urge that they are entitled to a reversal for the following reasons:

I. The court erred in overruling Bennett and Clevenger's motion for acquittal on Count I upon the ground that there is a fatal variance between the indictment charging a single conspiracy and the proof showing at best a number of separate conspiracies.

II. The court erred in its instructions permitting conviction if the conspiracies were separate and distinct and in failing to delineate and define such separate conspiracies and gave the jury a roving commission to return convictions upon undefined conspiracies.

III. The court by its instruction on the substantive counts relating to automobile repairs improperly placed the burden of proof upon the defendants.

IV. The court erred in refusing to permit appellants to call and examine Special Assistant Attorney General Featherstone as a witness.

V. The court erred in failing to strike Robert Williams' testimony by reason of the Government's failure to comply with 18 U.S.C.A. § 3500.

Appellant Bennett joins in the points just stated and asserts additional grounds for reversal as follows:

VI. The court erred in overruling Bennett's motion for acquittal on Count VIII as the Government has failed to produce substantial evidence to support conviction upon such count.

VII. The court erred in ordering Bennett's counsel to refrain from commenting in closing arguments upon the failure of certain codefendants to testify thereby depriving Bennett of a fair trial.

We shall consider the errors asserted in the order in which they have just been stated.

### I.

Bennett and Clevenger in their timely motions for acquittal, which were renewed after verdict, urged that there was a fatal variance in Count I in that said count charges a single overall conspiracy, whereas the proof at best shows only many separate and distinct conspiracies involving the seven defendants and some fifteen non-indicted conspirators and that under the teaching of Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557, they have been prejudiced by such variance and hence the court erred in overruling their motions. The Government has consistently maintained that it has charged a

single overall conspiracy and that it has proved such conspiracy.

Recently in Isaacs v. United States, 8 Cir., 301 F.2d 706, we were confronted with the contention that the conspiracy to defraud the traction company was multiple rather than single. There, as here, the defendants did not receive their payoff out of the same transactions. The various fraudulent schemes employed differed considerably and involved different primary participants, both insiders and outsiders. In Isaacs by reason of the instruction given to acquit if a single overall conspiracy had not been proved, it was apparent the jury found the single conspiracy. We affirmed the conviction. At pages 724 to 726 of 301 F.2d we pointed out that the multiple conspiracy defense is not a novel one and we set out the principles to be applied in determining whether a single overall conspiracy is established, citing supporting authorities. No purpose will be served in restating such principles which are thoroughly discussed in Isaacs. We adhere to what we have there said.

Appellants stress their contention that the conspiracy here was of the circle type rather than of the chain type. We perceive no useful purpose in attempting to name the type of conspiracy here involved. Conspiracies to deal in contraband goods such as narcotics have sometimes been described as chain conspiracies. In such situations where all dealing with the narcotics know the transaction to be an illegal one, it is somewhat easier to infer an intention to participate in an overall illegal activity. For a discussion of the chain conspiracy situation, see United States v. Agueci, 2 Cir., 310 F.2d 817, 827.

Isaacs did not involve dealing with a contraband product. Nevertheless, we found the evidence sufficient to support the finding of a general overall conspiracy in a situation where different groups performed different functions in carrying out the overall scheme to defraud the traction company.

The fundamental problem in each conspiracy case is to establish the nature and the scope of the conspiracy agreement and the connection of the defendants with the conspiracy. In Sigers v. United States, 5 Cir., 321 F.2d 843, Judge Wisdom characterizes the conspiracy there under consideration as follows:

"In a sense, there were three conspiratorial wheels, each with its hub and spokes. But these were wheels within a wheel. The larger wheel was the conspiracy charged in Count One of the indictment." 321 F.2d 843, 844.

In support of such statement, he quotes from United States v. Wenzel, 4 Cir., 311 F.2d 164, 167, as follows:

"It is fundamental that it is not necessary that every act undertaken in carrying out the object of a conspiracy should be participated in by every member of the conspiring group. In carrying out the purpose of a conspiracy it will be found that in practically every case different groups played different parts. To unite them in a single conspiracy it is only necessary that the activities of each individual or group be directed toward accomplishing a single criminal objective." 321 F.2d 843, 847.

In United States v. Speed, D.D.C., 78 F.Supp. 366, Judge Holtzoff considered a conspiracy to embezzle from a number of unions by means of various devices. The case bears much similarity to the case we are here considering. In support of his conclusion that the jury was justified in finding a general overall conspiracy, Judge Holtzoff states:

"The answer to the question whether there is a single conspiracy, therefore, depends on whether there is a single agreement. There may be an undertaking to commit one crime or several crimes. If there is but one agreement, there is but one conspiracy. A test whether the activities of the defendants constitute a single conspiracy is whether there is a common purpose underlying the separate acts, whether the same ob-

jective is being pursued in each instance, and whether there is concerted action to achieve this end. It follows hence that the fact that the conspirators undertook to commit several crimes does not necessitate the conclusion that there are several conspiracies. A conspiracy, such as is charged in this case, may be likened to a wheel, with the hub constituting the central figure, the spokes forming its various branches and ramifications, and all being held together by the rim, which represents the agreement." 78 F.Supp. 366, 368–369.

The opinion contains a good summary of the law with respect to proof of a conspiracy and the connection of the defendants with such conspiracy.

■ The issue of whether a conspiracy is a single overall conspiracy is usually one of fact. United States v. Crosby, 2 Cir., 294 F.2d 928, 945.

Judge Gibson, the able trial judge who heard all the evidence in ruling upon the post-trial motion for acquittal, discusses and considers Kotteakos and finds it to be factually distinguishable. With respect to the present case, the court states:

"They all knew each other, if not intimately, then on a day-to-day working basis. The three labor organizations were closely connected, both through extensive cooperation, and through common or interlocking officers and trusteeships. The evidence showed that the schemes to divert the union funds in all three organizations were similar, and most involved the same business establishments. Thus, the case at bar does not present the situation of the 'Wheel with spokes radiating from the hub, without the interconnecting rim,' as in the Kotteakos case, but a spoked wheel *with* the connecting rim, if the analogy used in the Kotteakos case is used. Thus the Court is of the opinion that it was a permissible inference that there was a single conspiracy, which is a question of fact for the jury."

■ When the tests stated in Isaacs are applied to the facts in this case, we are convinced that the court correctly determined that a submissible case was made out for the jury on the issue of the single overall conspiracy. Such determination affords a firm basis for the denial of the motion for acquittal.

■ The record before us consists of over 2000 pages of testimony, a lengthy record of court proceedings and many exhibits. A detailed discussion of the voluminous evidence would unduly extend this opinion. Our examination of the record abundantly satisfies us that there is substantial evidence to support a jury finding of an overall conspiracy to embezzle a very substantial amount of union funds from the three locals by devious means and that there is likewise adequate evidence to support a finding that each of the appellants knowingly joined such conspiracy and participated in furthering its objectives. Thus it is apparent that the court committed no error in overruling the motions for judgment of acquittal.

## II.

Bennett and Clevenger assert prejudicial error in the court's instruction reading:

"* * * If you find that there are separate conspiracies relating to the operation and acts alleged in the indictment in Count I and that not all of the defendants were members of or participated in such separate conspiracies, if you so find, then you may only consider as evidence against the members of such conspiracy the acts and declarations of any co-conspirator involved in that particular conspiracy."

Appellants have failed to comply with our rule requiring that the exception to the instruction be set out in the brief. Appellants had requested an instruction to the effect that if the jury found more than one conspiracy they must acquit the defendants. The court refused such

instruction. When the court asked for suggestions as to the instruction now attacked, Mr. Wadden, counsel for Roy Williams, stated: "For the purpose of the record, defendant Roy Williams can offer no suggestions because he feels the prejudice to him is so great that no instruction of the court can eliminate it from the case." Counsel for appellants took a similar position. In an earlier discussion relating to the instructions, Mr. Wadden did make some suggestion that the court delineate and define the conspiracies and the conspirators involved in the separate conspiracies. No specific exception was made to this instruction at the time opportunity was afforded so to do after the instructions were read to the jury. The defendants did, however, advise the court that they were preserving all exceptions previously made to the proposed instructions. While we consider it doubtful whether the exception now urged is properly preserved, we have chosen to consider it. The trial court in its post-trial memorandum explains the reason for the challenged instruction, stating:

"Even if separate conspiracies were proven, the variance of proof from the single conspiracy count in the indictment cannot be said to have been prejudicial to the convicted defendants. The jury was instructed many times, when evidence bearing on the conspiracy count was introduced, that such evidence could be used against any particular defendant only after the jury had found that particular defendant's connection with the conspiracy alleged from other independent evidence. Also, the jury was instructed that if it should find several distinct conspiracies then it could 'only consider as evidence against the members of such conspiracy the acts and declarations of any co-conspirator involved in that particular conspiracy.' Of course, assuming several separate conspiracies were proved the possible prejudice that might result is based on the danger that the jury will associate a particular defendant with evidence introduced to prove what was in fact a separate conspiracy with which that defendant had no connection. Under the circumstances of this case and because of the cautionary instructions given, it is difficult to conceive how this could have been prejudicial to any of the convicted defendants. Again, assuming separate conspiracies, all were so interrelated and connected with each other so that all could logically be viewed as part and parcel of the broad conspiracy charged of mulcting the unions of their funds."

The instructions as a whole meticulously defined all the elements of conspiracy and instructed the jury that the guilt of each defendant must be individually determined and that if any of the essential elements of conspiracy are not proved beyond a reasonable doubt as to a particular defendant, he should be acquitted. The court went over his proposed instructions in great detail with counsel prior to the final argument and incorporated in the instructions many of defendants' suggestions. The instructions as a whole are very fair to the appellants and the only exceptions taken to the instructions are those discussed in this opinion. Appellants in their brief with respect to the challenged instruction state:

"[W]hile it does an admirable job of keeping the acts and declaration of co-conspirators straight as between the undefined conspiracies, it sets up a situation where the jury is led to believe it can find either a single conspiracy or separate conspiracies as long as it slots each defendant in the proper separate conspiracy."

The court's failure to give an instruction for acquittal if separate conspiracies are found is not separately asserted as an error in a brief point. However, the general tenor of appellants' brief is that under Kotteakos it was prejudicial error to permit a conviction if the conspiracy

is not a single overall one. While we have hereinabove held that substantial evidence exists to support a single overall conspiracy and the knowing connection of each appellant therewith, there is no way of determining precisely upon this record whether or not the jury in fact found a single conspiracy. In a similar situation the Court of Appeals for the Second Circuit in United States v. Agueci, 310 F.2d 817, 827, states:

"In any event, the test for reversible error, if two conspiracies have been established instead of one, is whether the variance affects substantial rights. Fed.R.Crim.P. 52 (a). The material inquiry is not the existence but the prejudicial effect of the variance. While we believe, as we have already stated, that the jury could find there was but one conspiracy, the finding of more than one conspiracy would not result in prejudice to any of the defendants in the case before us. See Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). The requirements for sustaining a verdict in which there has been a variance have been met. The several conspiracies, if there had been such, could have been joined in a single indictment or consolidated for a single trial and the conduct of the trial was such that the danger resulting from the admission of evidence not chargeable to any appellant was minimal."

▇ In our view, any conspiracy found to exist in the present case with respect to appellants would fall within the framework of the conspiracy charged in the indictment. Under such circumstances, it is established that proof of separate conspiracies does not constitute a fatal variance. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314. In Berger a single conspiracy was charged and two conspiracies were found to exist. The court, rejecting the fatal variance contention, stated:

"The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense." 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L. Ed. 1314.

In our present case, the two tests stated in Berger are fully met.

Kotteakos does not dispute the holding of Berger as applied to the facts in Berger. In Kotteakos the court points out that while a single conspiracy was charged, the Government admitted upon appeal that there were at least eight separate and distinct conspiracies. Thirty-two defendants were indicted. The only connection between the different groups of conspirators was that the individual fraudulent loan transactions were all carried out through the same person, Brown. No group derived any benefit from the activity of any other group. Outside of Brown, none of the defendants had any common interest in the success of any other defendant and no relationship was established between the various defendants exclusive of Brown. The court stresses at length the likelihood of prejudice to the separate defendants involved in the separate conspiracies by the mass trial and the danger of transfer of guilt, stating:

"Here toleration went too far. We do not think that either Congress, when it enacted § 269, or this Court, when deciding the Berger case, intended to authorize the Government to string together, for common trial, eight or more separate and distinct crimes, conspiracies related in kind though they might be, when the only nexus among them lies in the fact that one man participated in all.

Leeway there must be for such cases as the Berger situation and for others where proof may not accord with exact specifications in indictments. Otherwise criminal conspirators never could be brought to halt. But if the practice here followed were to stand, we see nothing to prevent its extension to a dozen, a score, or more conspiracies and at the same time to scores of men involved, if at all, only separately in them. The dangers of transference of guilt from one to another across the line separating conspiracies, subconsciously or otherwise, are so great that no one really can say prejudice to substantial right has not taken place. Section 269 had no purpose to go so far. The line must be drawn somewhere. Whether or not Berger marks the limit, for this sort of error and case, we are clear that it must lie somewhere between that case and this one." 328 U.S. 750, 773–774, 66 S.Ct. 1239, 1252, 90 L.Ed. 1557.

The following cases, among others, have held that even if the proof could be interpreted as showing multiple conspiracies, there was no prejudicial error or fatal variance from the indictment charging one conspiracy. Berger v. United States, supra; Grissette v. United States, 5 Cir., 313 F.2d 187, 188; United States v. Agueci, 2 Cir., 310 F.2d 817, 827; Harlow v. United States, 5 Cir., 301 F.2d 361, 369; United States v. Santore, 2 Cir., 290 F.2d 51, 68–69; Hanis v. United States, 8 Cir., 246 F.2d 781, 789; Jolley v. United States, 5 Cir., 232 F.2d 83, 88; Ritter v. United States, 10 Cir., 230 F.2d 324, 328–329; Owens v. United States, 5 Cir., 221 F.2d 351, 356; United States v. Speed, D.D.C., 78 F. Supp. 366, 368.

If separate conspiracies are in fact here involved, this case comes much closer to Berger than Kotteakos. The evidence clearly points to Hayes as the creator, the key figure and substantial beneficiary of all the fraudulent schemes. No prejudice is claimed or shown with respect to Hayes. Bennett as secretary-treasurer signed many of the checks on union funds. Evidence shows he had an important part in arranging for the fraudulent car repairs including some upon his own automobile. Additionally on one occasion he was given an open envelope by Harold's D-X containing charge slips and currency for delivery to Robert Williams. Because of a pending investigation, Williams refused to accept the envelope and at Williams' suggestion Bennett returned the envelope to the donor.

Clevenger's direct activity was in connection with the car repair fraud. There is evidence that in a number of instances he brought in cars which were not entitled to repairs at union expense and that he directed such charges to be made on his official car and thus have the bills paid by the union. A similar practice was followed at the garages by Hayes and Bennett and there is evidence that Clevenger had knowledge of such activities.

Here, unlike the situation in some of the cases relied upon by the appellants, the defendants charged were a closely knit group acquainted with each other. The offices of each of the unions were located in the same building. Some of the defendants were officers or employees of more than one of the locals involved.

The fact that the defendants Rogers and Roy Williams were acquitted supports the view that the jury was not confused by the court's instructions and that it determined the guilt of each defendant upon the basis of the evidence admissible against such defendant. See United States v. Rabin, 7 Cir., 316 F.2d 564, 568.

The trial of multiple defendants frequently raises trial problems. Appellants have not demonstrated any prejudicial error flowing from their joint trial. In our view, the danger of confusion or of finding guilt by association in this case is far less than that existing in many other cases involving mass trials which we have affirmed. See Butler v.

United States, 8 Cir., 317 F.2d 249, 263; Isaacs v. United States, supra.

 Defendants in order to be entitled to relief for prejudicial error in a mass trial must show prejudice with respect to themselves. This they have failed to do.

### III.

 Defendants' contention that the court's instruction with reference to the substantive counts relating to automobile repairs is prejudicially erroneous in that the instruction shifts the burden of proof upon appellants is without merit. The portion of the instruction excepted to and here challenged reads:

"To explain it another way, if you believe that the repair was made on a car that a defendant was using in union business and that said repair was necessitated by the use of the car in union business, then you must bring back a verdict of acquittal as to said defendant on the substantive count in which he is involved on these charges, even though said defendant may have had a rental car or a car allowance on a car other than the one actually repaired."

Appellants concede that the court in the paragraph immediately preceding correctly states the law and places the burden upon the Government upon the repair counts. The apparent purpose of the challenged instruction is to direct the jury to consider appellants' contention that the disputed repairs were authorized.

The instructions as a whole clearly place the burden of proof upon the Government to establish all elements of the offense. When the challenged instruction is read in the light of the instructions as a whole, it is apparent that the jury could not have been misled by the instruction.

### IV.

 The trial court did not abuse its discretion in refusing to permit appellants to call Mr. Featherstone, Government counsel who was participating in the trial, as a witness. The trial court has a broad discretion with respect to examination of witnesses. Complications arise where attorneys actively participating in the trial are produced as witnesses. We recently considered this problem and set forth the applicable law and pertinent authorities in Gajewski v. United States, 8 Cir., 321 F.2d 261, 268:

"Although, as the above authorities indicate, such judicial discretion is generally exercised to prevent testimony by an advocate in *favor* of the party whom he represents, a court may, without abusing its discretion, refuse to allow the *defense* to call as a witness the United States Attorney trying the case."

In our present case, appellants did not notify the Government of their desire to use Mr. Featherstone as a witness until well along in the trial of the case.

A brief statement of the facts relating to the calling of Mr. Featherstone as a witness appears to be desirable. While testifying as a Government witness, defendant Robert Williams admitted having conversations with Mr. Featherstone with respect to the facts of this case. On cross-examination the following questions and answers appear during the examination of Mr. Williams by defendants' counsel:

"Q. Recommendations. He [Mr. Featherstone] would recommend to the judge you get leniency? Right?

"A. I couldn't say what he meant to recommend. All I can say is that he used the word recommendations.

"Q. What did you take this to mean?

"A. I took it to mean he would tell the court that I had fully cooperated and told the story as it was, and that was it.

"Q. And you expected leniency from the court, isn't that it?

"A. I couldn't tell what I expected. My expectations—I can't—"

Defendants' counsel then stated they desired to call Mr. Featherstone to estab-

lish what conversation took place between him and Mr. Williams and what promises were made and what recommendations were to be made to the court. When this first arose, the trial court suggested that Mr. Featherstone file an affidavit covering the conversation. Such affidavit was never filed. On the following day the demand for Mr. Featherstone's testimony was renewed. At that time, Mr. Featherstone stated out of the presence of the jury:

"As to the recommendations, that question has been answered. As to the other part of the conversation, it would have to be concerning his personal safety, the tie-up between the local Mafia and the Teamsters, and various other matters. That's the only things we discussed, his personal safety and how we would prevent the Teamsters from killing him. Now, if he wants that—"

Nothing was then said about the failure of Mr. Featherstone to file the affidavit nor was this matter pursued at any time during the trial. The Government's position is that the statement served the purpose of the suggested affidavit. The court stated:

"I don't think at this time that Mr. Featherstone should be called on the witness stand unless it is by agreement of all of defense counsel. Now, he has stated that his testimony probably would be prejudicial to many of the defendants. Now, if they want to invite that, that's one thing. I don't want any situation with mistrial called or the grounds for mistrial."

The following colloquy appears:

"Mr. Featherstone: And further, Your Honor, if any questions were asked of me, I am sure the answer would have to be prejudicial to these defendants and then they would be screaming for a mistrial.

"The Court: Well, I think they would have invited that if they put you on the stand.

"Mr. Broaddus [counsel for Appellant Clevenger]: Not this counsel, Your Honor."

It would appear that if Mr. Featherstone were called as a witness and pressed to give the full conversation he had with Williams, the testimony would include Williams' expression of personal danger from the defendants. Such testimony could well be highly prejudicial. Since Clevenger's counsel indicated that he would not assume the risk, we believe the court exercised its discretion properly in refusing to permit defendants to call Mr. Featherstone as a witness.

While Williams' testimony with respect to the nature of the recommendations he expected is not as specific as might be desired, it would convey to the jury the thought that he was expecting some special consideration and there is little reason to believe in the light of Mr. Featherstone's record statement that anything Mr. Featherstone could say would be of any help to the defendant. On the contrary, serious danger existed that Mr. Featherstone, if called, might be pressed to disclose the entire conversation which included the discussion about protection.

### V.

The trial court did not commit error in refusing to strike the testimony of Robert Williams under 18 U.S.C.A. § 3500 because of the Government's failure to produce FBI notes of the interview with Williams. Defendants were given the "smooth report" prepared from notes taken by the FBI agents which report was approved and signed by Williams. Such report falls within (e) (1) of § 3500. Appellants urge that they are entitled to the notes taken by the FBI agents which notes were used as an aid in preparing the smooth reports. Such claim is made under § 3500(e) (2), which reads:

"(e) The term 'statement', as used in subsections (b), (c), and (d) of this section in relation to any wit-

ness called by the United States, means—

* * * * * *

"(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement."

The trial court states the issue as follows:

"The question then clearly becomes, were the handwritten notes of the interviews with Robert Williams 'statements' within the purview of § 3500, and if they were, was the government entitled, in good faith, to destroy such notes and produce only the 'smooth reports' prepared from such notes?"

It is established that FBI agents had five interviews with Williams; that no shorthand notes or electronic or mechanical recording was made of such interviews; that incomplete longhand notes were taken which were not verbatim; that smooth reports were drawn from such notes and the agents' memory; that Williams did not approve the original draft entirely; that indicated changes were made, and the smooth report was then approved and signed by Williams; that the agents in accordance with their usual practice destroyed the rough notes. The trial court found that the notes made were not of a type within the contemplation of (e) (2) and hence the Government was not required to produce such notes, which notes had previously been destroyed in good faith. Such were permissible findings of fact supported by substantial evidence.

 The question of whether a statement or transaction falls within § 3500 is ordinarily a question of fact to be determined by the trial court and governed by the clearly erroneous standard. Campbell v. United States, 373 U.S. 487, 493, 83 S.Ct. 1356, 10 L.Ed.2d 501; Pal-

ermo v. United States, 360 U.S. 343, 354–356, 79 S.Ct. 1212, 3 L.Ed.2d 1287. Appellants have failed to demonstrate that the court's foregoing findings are clearly erroneous.

 Moreover, if contrary to what we have just stated, the trial court was wrong in its determination, appellants have failed to show the error to be prejudicial. The prejudicial error rule applies to § 3500. Rosenberg v. United States, 360 U.S. 367, 371, 79 S.Ct. 1231, 3 L.Ed.2d 1304. In our present case, defendants were furnished with the smooth report signed and approved by the witness. There is nothing in the record to indicate any likelihood that the notes would vary substantially from the statement furnished. If this is not so, it would seem extremely unlikely that the notes meet the requirements of (e) (2) inasmuch as the report furnished had been approved by the witness.

## VI.

Bennett challenges the sufficiency of the evidence to support his conviction on Count VIII charging fraudulent automobile repairs. Bennett was at all times subsequent to October 1959 furnished with a rented car for business purposes. Union officials were entitled to repairs, depreciation, insurance and gas on personal cars used for business purposes. There is some evidence that officials furnished rented cars still could use private cars for business and thereby be entitled to repairs at union expense. There is also evidence that generally the right to repairs and depreciation terminated when a rented car was furnished.

 We agree with Bennett's contention that the burden is upon the Government to show wrongful appropriation of union funds as well as fraud. The trial court adequately answers Bennett's contention, stating:

"Defendant Bennett concedes that there was sufficient evidence to raise an inference that the requisite intent was present on this charge, but claims that the government did not make a prima facie case that the car

repaired in this count was not used in union business. It seems clear to the Court that, viewing the evidence in a light most favorable to the prosecution, enough evidence was produced to raise an inference sufficient to go to the jury that the car in question was not being used in union business. The very nature of charging the repairs to another car would suggest that the transaction was fraudulent in this respect. When this is coupled to the fact that defendant Bennett had been furnished with a rented car for use in union business, the inference becomes stronger. It is true that the defendant did adduce testimony which tended to show that he continued to use his own personal car on union business, but this was a question of fact, which it was the primary duty of the jury to decide as to whether defendant Bennett was entitled to have his personal car repaired at union expense. The jury having obviously decided that he did not, in fact, have such a right, it does not devolve upon this Court to overturn that decision of fact."

■ The question of whether Bennett's use of his personal car was such under union policy as to authorize repairs chargeable to the union raises a fact issue. The jury by its verdict found against Bennett upon such issue.

## VII.

Finally Bennett urges the court committed prejudicial error as to him in ordering his counsel not to comment in his argument to the jury upon the failure of co-defendants to testify. This error is predicated upon the majority opinion in De Luna v. United States, 5 Cir., 308 F.2d 140, rehearing denied 324 F.2d 375. The Government attempts to brush off this contention as frivolous, giving it only brief footnote treatment. We consider the issue raised to be substantial and troublesome.

De Luna involved a narcotics charge against De Luna and Gomez. Gomez took the stand and testified that while traveling in a car De Luna tossed a package to him and told him to throw it out of the window. Gomez further testified that he had no knowledge of the contents of the package. De Luna, as was his right, elected not to testify. In argument to the jury, counsel for Gomez emphasized that Gomez had taken the stand and told the truth but that De Luna had not testified and had consequently not denied Gomez's version of what had happened. Gomez was acquitted. De Luna was convicted. Upon appeal, all judges agreed that prejudicial error had been committed against De Luna by permitting the reference to his failure to testify. Cases supporting such conclusion are adequately set out in the De Luna opinion.

Gomez, because of his acquittal, had no occasion to appeal. At the trial his counsel was permitted to comment at length upon De Luna's right to testify. The correctness of such ruling from Gomez's standpoint is not squarely raised upon the appeal but such issue necessarily enters into the discussion because of the conflicting rights of the two defendants. The majority opinion holds that Gomez's counsel had a right to comment upon De Luna's failure to testify even though the effect of such right was to create prejudicial error against De Luna. Judge Bell, concurring specially, sets out the reasons why he believes counsel for Gomez had no right to comment.

■ Our case is significantly distinguishable factually from De Luna. We do not believe that Bennett upon the basis of the record in this case has shown that any prejudice has resulted to him from the denial of the right to comment. The charges against five defendants were submitted to the jury. Bennett, Roy Williams and Rogers took the witness stand. Defendants Hayes and Clevenger did not testify. Bennett's testimony is to the effect that he committed no wrongful acts. We do not here have a situation where Bennett or any of the testifying defendants pinned any criminal acts upon non-testifying defendants.

Here, unlike the situation in De Luna, Bennett did not place the sole blame for the wrongful acts charged upon a co-defendant. Bennett made no charges against Hayes or Clevenger with respect to any issue material to his defense. Under such circumstances, it is difficult to perceive any benefit that might flow to Bennett by permitting him to call the attention of the jury to the fact that some of his codefendants did not testify.

A trial judge has a large responsibility in assuring a fair trial to all parties. The burden of this responsibility is greatly increased in a mass trial where conflicting rights of defendants may arise. Permitting comment upon the failure of a defendant to testify constitutes prejudicial error as to the non-testifying defendant. On the other hand, where defendant is tried separately his counsel has the right to make fair comment upon the fact that his testimony has not been denied or contradicted. The jury is entitled to consider lack of evidence as well as evidence in reaching its determination.

The problem here presented requires the weighing of the rights of the testifying and the non-testifying defendants and the preservation of the constitutional right to a fair trial guaranteed to each defendant. Upon the peculiar facts of this case, our finding of no prejudice requires an affirmance upon this issue. We limit our decision strictly to the precise facts of this particular case.

We have given careful consideration to all errors asserted by the appellants. We hold that the appellants have had a fair trial and that the court committed no prejudicial error. Affirmed.