**UNITED STATES of America,**

**v.**

**Raymond MARQUEZ, a/k/a Spanish Raymond, Anthony Angelet and Pedro Rivera, a/k/a "Pete Russo," Defendants.**

**No. 70 Cr. 113.**

United States District Court,
S. D. New York.

Dec. 4, 1970.

---

Whitney North Seymour, Jr., U. S. Atty. for the Southern District of N. Y., New York City, for the United States; Thomas J. Fitzpatrick, Asst. U. S. Atty., of counsel.

Henry B. Rothblatt, New York City, for defendant Rivera; Stephan H. Peskin, New York City, of counsel.

EDWARD WEINFELD, District Judge.

This is the second motion made by the defendant Rivera to obtain a severance of his trial from that of his codefendants, all of whom are charged in a three-count indictment with violation of 18 U.S.C., sections 1952 and 2, by using interstate commerce facilities to distribute gambling proceeds (count 1), and to commit extortion (count 2), and conspiracy to commit the foregoing offenses in violation of 18 U.S.C., section 371 (count 3).

The defendant's first motion was based upon the vague allegation that "[i]t may very well be that the course of the trial may make it necessary for the defendant Pedro Rivera, to call his co-defendants as witnesses on his behalf." There was no allegation that the codefendants, if called, would testify, or the nature of their purported testimony. Judge Croake denied the motion upon the ground that "Rivera has failed to satisfy the burden of establishing that he will in fact be prejudiced by such a joint trial." The present motion then followed. It seeks an order in limine permitting Rivera to comment on his co-defendants' failure to testify, and if the court rules that such comment will be unduly prejudicial to the codefendants under the Fifth Amendment privilege, requests that a severance be granted. There is no substance to this motion, which obviously as a mere shift in tack in a renewed effort to obtain the severance previously denied.

Rivera states that he will testify in his own defense. His counsel states that his two codefendants have long criminal records, and anticipates that each will invoke his privilege against self-incrimination to avoid testifying upon the trial, and further that counsel intends to comment that "such refusal is evidence of * * * Rivera's innocence." Of course it is no such evidence. Whether an inference, favorable to Rivera, may be drawn from that circumstance is another matter, which we shall presently discuss.

 Preliminarily, it is observed that the movant's position is fatally defective and ambiguous.[1] He has glossed over the difference between the codefendants foregoing their statutory privilege to testify in their own defense upon their trial and their right, if called as witnesses at a separate trial, to assert their constitutional privilege against self-incrimination.[2] Movant's counsel states only that "we intend to comment upon the refusal of the co-defendants to testify. * * *" He does not state whether at a separate trial he would seek to call the two codefendants with the expectation that each would assert his privilege against self-incrimination.[3] And, assuming he has a right to comment on the codefendants' assertion of the privilege when called as witnesses at a separate trial, he does not state how doing so would benefit him. Movant has failed to show the nature of his defense; he has not shown in what respect, if any, his defense is inconsistent with or antagonistic to that of his codefendants. Thus, upon the papers here presented, Rivera has made no showing of probable prejudice if he is not permitted to comment upon his codefendants' silence or the assertion of their privilege against self-incrimination, and this alone requires denial of his motion.[4]

1. *Cf.* United States v. Wolfson, Docket Nos. 33326–29, (2d Cir., Nov. 11, 1970).

2. As to these different situations it has been observed: "There is no reason to think that a co-defendant would be any more willing to waive his constitutional privilege against self-incrimination when called as a witness at a separate trial than he would be willing not to insist upon his privilege as a defendant not to take the stand." Gorin v. United States, 313 F.2d 641, 645–646 (1st Cir.), cert. denied, 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052 (1963); *see also* United States v. Caci, 401 F.2d 664, 671– 672 (2d Cir. 1968), cert. denied as to defendants Caci and Cino, 394 U.S. 917, 89 S.Ct. 1180, 1188, 22 L.Ed.2d 450, rev'd on other grounds as to defendants Natarelli and Randaccio, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969); United States v. Housing Foundation of America, 176 F.2d 665, 666 (3d Cir. 1949).

3. On his present motion, movant makes no suggestion, as he did on his last, that it may be necessary to call his codefendants at a separate trial with the hope that they will testify, rather than that they will assert their Fifth Amendment privilege. Even if a claim of this nature were made, it would not, without more, justify a severance. Smith v. United States, 385 F.2d 34, 38 (5th Cir. 1967); United States v. Kahn, 381 F.2d 824, 841 (7th Cir.), cert. denied, 389 U.S. 1015, 88 S.Ct. 591. 19 L.Ed.2d 661 (1967); United States v. Kahn, 366 F.2d 259, 263–264 (2d Cir.), cert. denied, 385 U.S. 948, 87 S.Ct. 324, 17 L.Ed.2d 226 (1966); Gorin v. United States, 313 F.2d 641, 645–646 (1st Cir.), cert. denied, 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052 (1963).

4. *See* United States v. Caci, 401 F.2d 664, 672 (2d Cir. 1968), cert. denied as to defendants Caci and Cino, 394 U.S. 917, 89 S.Ct. 1180, 1188, 22 L.Ed.2d 450, rev'd on other grounds as to defendants Natarelli and Randaccio, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969); *see also* United States v. De La Cruz Bellinger, 422 F.2d 723, 727 (9th Cir.), cert. denied, 398 U.S. 942, 90 S.Ct. 1860, 26 L.Ed.2d 278 (1970); United States v. Battaglia, 394 F.2d 304, 317 (7th Cir. 1968), rev'd on other grounds, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969).; United States v. Kahn, 381 F.2d 824, 838–840 (7th Cir.), cert. denied, 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661 (1967); Kolod v. United States, 371 F.2d 983, 990–991 (10th Cir. 1967), rev'd on other grounds, 390 U.S. 136, 88 S.Ct. 752, 19 L.Ed.2d 962 (1968); Hayes v. United States, 329 F.2d 209, 221–222 (8th Cir.), cert. denied sub nom. Ben-

However, far more fundamental reasons require denial of the motion. It is beyond challenge that upon a joint trial any comment by Rivera upon the failure of his codefendants to take the witness stand would constitute a violation of their rights under the Fifth Amendment.[5] Recognizing this, Rivera asks for a separate trial from his codefendants, apparently upon an assumption that if the codefendants were there called as witnesses by the defense,[6] and they refused to testify in the exercise of their constitutional right against self-incrimination, he would be free to comment thereon and entitled to an instruction which would permit the jury to draw an inference in his favor. To support this contention, he places his principal reliance upon De Luna v. United States.[7] In that case, de Luna and

Gomez, after denial of a motion for a separate trial, were tried jointly on a narcotics charge. They were the occupants of a moving car from which police had seen Gomez throw a package containing narcotics. Gomez took the witness stand. He asserted his innocence and placed all blame on de Luna. He testified de Luna had the package, saw the police approach, and threw it to Gomez, telling him to throw it out of the window. De Luna did not testify. His lawyer argued to the jury that de Luna was being made the scapegoat, and that Gomez alone had the package at all times. On the other hand, Gomez's attorney, in his summation, contrasted Gomez's willingness with de Luna's unwillingness to take the witness stand, and argued that an honest man is not afraid to take the stand and testify. Gomez was

nett v. United States, 377 U.S. 980, 84 S.Ct. 1883, 12 L.Ed.2d 748 (1964); United States v. Kaufman, 291 F.Supp. 451, 453–454 (S.D.N.Y.1968).; United States v. Wolfson, 289 F.Supp. 903 (S.D. N.Y.1968), aff'd, (2d Cir., Nov. 11, 1970).

**5.** United States v. De La Cruz Bellinger, 422 F.2d 723, 726 (9th Cir.), cert. denied, 398 U.S. 942, 90 S.Ct. 1860, 26 L.Ed.2d 278 (1970); United States v. Caci, 401 F.2d 664, 672 (2d Cir. 1968), cert. denied as to defendants Caci and Cino, 394 U.S. 917, 89 S.Ct. 1180, 1188, 22 L.Ed.2d 450, rev'd on other grounds as to defendants Natarelli and Randaccio, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969); Kolod v. United States, 371 F.2d 983, 991 (10th Cir. 1967), rev'd on other grounds, 390 U.S. 136, 88 S.Ct. 752, 19 L.Ed.2d 962 (1968); Hayes v. United States, 329 F.2d 209, 221 (8th Cir.), cert. denied sub nom. Bennett v. United States, 377 U.S. 980. 84 S.Ct. 1883, 12 L.Ed.2d 748 (1964); De Luna v. United States, 308 F.2d 140, 150–155 (5th Cir. 1962), petition for rehearing denied, 324 F.2d 375 (5th Cir. 1963).

**6.** The government, if it knew a defendant or witness would assert his privilege against self-incrimination, would be precluded from calling him before the jury. United States v. Maloney, 262 F.2d 535 (2d Cir. 1959). There is no reason why a defendant under the same circum-

stances should be permitted to do so, and it is questionable that a court would permit this ploy by the defendant.

**7.** 308 F.2d 140 (5th Cir. 1962), petition for rehearing denied, 324 F.2d 375 (1963). Petitioner also relies upon United States v. Echeles, 352 F.2d 892 (7th Cir. 1965), which, upon its facts, is clearly distinguishable from the instant case. Echeles, an attorney, was tried jointly with a former client, Arrington. Echeles moved in advance of trial for a severance, which was denied, on the ground that if Arrington, who had repeatedly in open court made statements exculpatory of Echeles, were tried first, he would not invoke his Fifth Amendment privilege at a separate trial and would testify as to the exculpatory matter. The Court of Appeals held the denial of Echeles' motion was an abuse of discretion, since it deprived him of the exculpatory evidence. It stated: "we hold merely that, having knowledge of Arrington's record testimony protesting Echeles' innocence, and considering the obvious importance of such testimony to Echeles, it was error to deny the motion for a separate trial. * * *" *Id.* at 898. Another factor in that case was additional prejudice arising out of evidence of incriminating statements, admissible against Arrington, but not against Echeles. *See also* United States v. Gleason, 259 F.Supp. 282 (S.D.N.Y.1966), which is distinguishable on the same grounds.

acquitted; de Luna was found guilty. On appeal, de Luna's conviction was reversed because of comment by Gomez's attorney upon de Luna's exercise of his right not to testify. The precise holding of the Fifth Circuit Court of Appeals was that it was a violation of de Luna's constitutionally guaranteed right to remain silent upon his trial for the trial court to have permitted Gomez's attorney to comment unfavorably on de Luna's failure to testify. All three judges concurred in this holding. However, two of the judges, in dictum by Judge Minor Wisdom, observed:

"If an attorney's duty to his client should require him to draw the jury's attention to the possible inference of guilt from a co-defendant's silence, the trial judge's duty is to order that the defendants be tried separately." [8]

And the dictum was broadened:

"And considering the case from Gomez's point of view, his attorneys should be free to draw all rational inferences from the failure of a co-defendant to testify, just as an attorney is free to comment on the effect of any interested party's failure to produce material evidence in his possession or to call witnesses who have knowledge of pertinent facts. Gomez has rights as well as de Luna, and they should be no less than if he were prosecuted singly. His right to confrontation allows him to invoke every inference from de Luna's absence from the stand." [9]

Circuit Judge Bell expressed disagreement with this pronouncement, stating that while "[i]t was proper in the defense of Gomez for his counsel to comment upon the fact that he had taken the stand * * * it was improper for him to comment upon the fact that de Luna had not taken the stand." And he added: "The opinion of the majority will create an intolerable procedural problem." [10]

While the majority dictum seemingly gives support to petitioner's claim that at a separate trial he would be entitled to comment upon his codefendants' assertion of their constitutional privilege, I must respectfully disagree with its learned author.[11] The issue is one of constitutional significance. The right against self-incrimination is not a

---

8. 308 F.2d at 141.

9. *Id.* at 143.

10. *Id.* at 155, 156.

11. The *De Luna* view generally has not found favor with those courts which have considered it, and at least one Court of Appeals has flatly rejected it. In United States v. McKinney, 379 F.2d 259, 265 (6th Cir. 1967), the court stated: "We agree with the concurring opinion in *De Luna*, however, to the effect that such comment by the attorney would not be permissible." Other courts have narrowly contained it, and have never held that a severance should have been granted for the reasons stated in *De Luna*. United States v. De La Cruz Bellinger, 422 F.2d 723, 726–727 (9th Cir.) cert. denied, 398 U.S. 942, 90 S.Ct. 1860, 26 L.Ed.2d 278 (1970); United States v. Caci, 401 F.2d 664, 671–672 (2d Cir. 1968), cert. denied as to defendants Caci and Cino, 394 U.S. 917, 89 S.Ct. 1180, 1188, 22 L.Ed.2d 450, rev'd on other grounds as to defendants Natarelli and Randaccio, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969); United States v. Battaglia, 394 F.2d 304, 317 (7th Cir. 1968), rev'd on other grounds, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969); United States v. Kahn, 381 F.2d 824, 836–841 (7th Cir.), cert. denied, 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661 (1967); Kolod v. United States, 371 F.2d 983, 990–991 (10th Cir. 1967), rev'd on other grounds, 390 U.S. 136, 88 S.Ct. 752, 19 L.Ed.2d 962 (1968); Hayes v. United States, 329 F.2d 209, 221–222 (8th Cir.), cert. denied sub nom. Bennett v. United States, 377 U.S. 980, 84 S.Ct. 1883, 12 L.Ed.2d 748 (1964). And it is not without interest to note that the Fifth Circuit itself stated, with respect to *De Luna*: "We did not there hold that severance would be demanded by an intention to call a codefendant who would likely invoke the Fifth Amendment. The holding was directed to the effect of such a situation on the recalcitrant defendant when his silence was commented upon in argument." Smith v. United States, 385 F.2d 34, 38 n. 12 (5th Cir. 1967).

mere rule of evidence but a fundamental constitutional right available to a witness as well as to an accused.[12] The history and development of the Fifth Amendment has been extensively reviewed and need not be recounted in detail here.[13] It is sufficient to observe that in recent years the Supreme Court has given forceful expression to its thrust:

"Recent re-examination of the history and meaning of the Fifth Amendment has emphasized anew that one of the basic functions of the privilege is to protect *innocent* men. Griswold, The Fifth Amendment Today, 9–30, 53–82. 'Too many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are either guilty of crime or commit perjury in claiming the privilege.' Ullmann v. United States, 350 U.S. 422, 426, [76 S.Ct. 497, 500, 100 L.Ed. 511]. See also Slochower v. Board of [Higher] Education, 350 U.S. 551, when, at the same Term, this Court said at pp. 557–558, [76 S.Ct. 637, at page 641, 100 L.Ed. 692]: 'The privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances.' "[14]

It is true, the holding in *Grunewald* was that an accused's prior assertion of the privilege against self-incrimination before a grand jury could not be used to impeach his general credibility when he subsequently answered the same questions at his trial.[15] However, it is not without interest that four Justices, while in agreement with the Court's holding, did not accept the limitation of the holding to "the circumstances of this case." Justice Black, in his concurring opinion, joined in by Chief Justice Warren and Justices Douglas and Brennan, said:

" * * * I do not, like the Court, rest my conclusion on the special circumstances of this case. * * * It seems peculiarly incongruous and indefensible for courts which exist and act only under the Constitution to draw inferences of lack of honesty from invocation of a privilege deemed worthy of enshrinement in the Constitution." [16]

Wigmore, certainly never partial to the constitutional right against self-incrimination, states the rule to be that "an inference against the party is not to be made because of the witness' claim of privilege." [17]

When the Supreme Court decided in Griffin v. California [18] that it was constitutionally impermissible for either a federal or state prosecutor or judge to

12. McCarthy v. Arndstein, 266 U.S. 34, 40, 45 S.Ct. 16, 69 L.Ed. 158 (1924).

13. Miranda v. Arizona, 384 U.S. 436, 458–461, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Murphy v. Waterfront Comm'n, 378 U.S. 52, 55–57, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); Ullmann v. United States, 350 U.S. 422, 426–428, 76 S.Ct. 497, 100 L.Ed. 511 (1956); De Luna v. United States, 308 F.2d 140, 144–150 (5th Cir. 1962), petition for rehearing denied, 324 F.2d 375 (1963); United States v. St. Pierre, 132 F.2d 837, 841–842 (2d Cir. 1942) (Frank, J., dissenting), appeal dismissed, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943); *see also* Griswold, The Fifth Amendment Today (1955); Levy, Origins of the Fifth Amendment (1968).

14. Grunewald v. United States, 353 U.S. 391, 421, 77 S.Ct. 963, 982, 1 L.Ed.2d 931 (1957).

15. "The holding in *Grunewald* was that the defendant's answers to certain questions were not inconsistent with his previous reliance upon the Fifth Amendment to excuse a refusal to answer those very same questions. Since defendant's testimony placed his credibility in issue, the necessary implication of that holding is that his prior refusal to testify could not be used to impeach his general credibility." Stewart v. United States, 366 U.S. 1, 7 n. 14, 81 S.Ct. 941, 944, 6 L.Ed. 2d 84 (1961).

16. 353 U.S. at 425, 77 S.Ct. at 984 (Black, J., concurring).

17. 8 Wigmore, Evidence § 2272 at 437 (McNaughton Rev.Ed.1961).

18. 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed. 2d 106 (1965).

urge upon a jury an adverse inference from a defendant's failure to testify, the possibility of convicting the innocent was stated as one of the reasons for the holding.

■ The Fifth Amendment privilege against self-incrimination has been protected by Congressional enactment that a defendant's failure to testify in his own defense "shall not create any presumption against him."[19] Although the prosecution is firmly barred from commenting either upon a defendant's affirmative assertion of his constitutional privilege against self-incrimination, or his right to remain silent at his trial, the codefendant here seeks to comment on a codefendant's assertion of his constitutional privilege when called as a witness. But if the assertion of the privilege carries with it no implication of guilt and the presumption of innocence remains in an accused's favor, whether in the role of defendant or witness,[20] there is no logical basis upon which to permit a jury to draw an inference of innocence in favor of a defendant who does testify because of a witness' or a codefendant's refusal to testify—in effect an adverse inference against the government. A party so asserting his constitutional right is not under the control of the government—and, of course, the government cannot call him to the witness stand to compel his testimony. Also, it may be assumed that his codefendants are not under his control. A witness who claims his Fifth Amendment privilege exercises a personal right, independent of the prosecution or the defense, and is in no way subject to their control.[21] The assertion of a constitutional right which deprives both sides of the witness' testimony should give rise to no inference, favorable or unfavorable, with respect to the nature of the witness' answer had he testified.[22] If in fact the invocation of the Fifth Amendment privilege is of such dimension that it permits no inference of guilt or criminal proclivities,[23] it is without probative value on the issue of the defendant's guilt or innocence,[24] and neither the prosecution nor the defense should be permitted to comment thereon. As has been aptly stated:

"Silence of the possible witness as a matter of constitutional right forecloses supposition of the basic facts which must exist as a foundation for inference. And if no facts are available upon which to found an inference, any supposed inference is actually only a matter of conjecture, speculation or imagination. * * * [T]he true measure of the matter is that the fact which the defendant would have before the jury, namely the declination of the witness to testify, is in fact no evidence at all, either of itself or by implication."[25]

■ In Johnson v. United States,[26] the Supreme Court, while not addressing itself directly to this issue, gave direction to the applicable principle when it quoted with approval the Supreme Court of Pennsylvania (Phelin v. Kenderdine, 20 Pa. 354, 363) as follows:

"If the privilege claimed by the witness be allowed, the matter is at an

19. 18 U.S.C. § 3481; see Stewart v. United States, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961).

20. Wilson v. United States, 149 U.S. 60, 66–67, 13 S.Ct. 765, 37 L.Ed. 650 (1893); United States v. Maloney, 262 F.2d 535 (2d Cir. 1959).

21. Commonwealth v. Ries, 337 Mass. 565, 150 N.E.2d 527, 541 (1958).

22. Billeci v. United States, 87 U.S.App. D.C. 274, 184 F.2d 394, 398 (1950); cf. United States v. Tomaiolo, 249 F.2d 683, 691–692 (2d Cir. 1957).

23. United States ex rel. Belfrage v. Shaughnessy, 212 F.2d 128, 130 (2d Cir. 1954).

24. United States v. Atnip, 374 F.2d 720 (7th Cir. 1967).

25. People v. Bernal, 254 Cal.App.2d 283, 62 Cal.Rptr. 96, 102–103, cert. denied, 389 U.S. 863, 88 S.Ct. 123, 19 L.Ed.2d 133 (1967).

26. 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943).

end. The claim of privilege and its allowance is properly no part of the evidence submitted to the jury, and no inferences whatever can be legitimately drawn by them from the legal assertion by the witness of his constitutional right. The allowance of the privilege would be a mockery of justice, if either party is to be affected injuriously by it." [27]

This view should set at rest any doubt on the issue. There is no basis for movant's claim for a separate trial, and accordingly it is denied.

**27.** *Id.* 318 U.S. at 196–197, 63 S.Ct. at 553.